**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
———————

No. 12-1220
———————

CLAUDE NICHOLAS STEWART,

Petitioner.

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
———————————————————

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A035 769 321)
Immigration Judge: Honorable Walter Durling
———————————————————

Submitted under Third Circuit LAR 34.1(a)
October 3, 2012

Before: SMITH, HARDIMAN and ROTH, <u>Circuit Judges</u>

(Opinion filed: October 12, 2012)
———————

O P I N I O N
———————

PER CURIAM

Claude Nicholas Stewart petitions for review of a decision of the Board of

Immigration Appeals ("BIA") dismissing his appeal of an Immigration Judge's ("IJ")

decision denying his applications for relief from removal. For the reasons that follow, we will deny the petition for review.

Stewart is forty-six years old and a native and citizen of Jamaica. He came to the United States as a lawful permanent resident in 1976, when he was ten years old. In 2010, a notice to appear was issued charging that Stewart is subject to removal because he had been convicted of an aggravated felony and a violation of law relating to a controlled substance. The charges are based on various drug-related convictions in Pennsylvania state court, including a drug trafficking conviction. Through counsel, Stewart conceded he is removable as charged and applied for relief under the Convention Against Torture ("CAT"). Stewart claims he will be harmed in Jamaica because he is bisexual and has mental health problems.[1]

In support of his CAT application, Stewart testified that at the age of 15 he was hit by a train and hospitalized for over a month. Stewart stated that after the accident he became withdrawn and turned to drugs. He has an extensive drug arrest record. Stewart was homeless from 2006 to 2009. He testified that people he associated with told him men would pay him to have oral sex with him. Stewart stated he succumbed to this because he was offered a place to stay and money. He testified that before he was homeless he had "[s]trictly heterosexual relationships." A.R. at 123.

Stewart stated that he would now describe his sexual orientation as bisexual and that he had told his girlfriend, his family, and other Jamaican immigration detainees that

---

[1]Stewart also applied for withholding of removal, but the IJ found him ineligible for this form of relief. Stewart does not contest this ruling.

2

he is bisexual. He testified that he has had more than 25 sexual encounters with men and that he has had three or four long-term relationships. Stewart stated that he is concerned for his safety if removed to Jamaica because he is bisexual. On cross-examination, Stewart testified that he began having oral sex with men for money but he then began to enjoy it. He stated that at the time of his arrest in 2010 he was living with a woman in an exclusive relationship. He also stated that he told his family about his bisexuality after his arrest.

Dr. Jonathan Gransee, a psychologist, evaluated Stewart prior to his hearing and submitted a report in support of his claim that he would be tortured in Jamaica due to his mental health issues. In the report, Dr. Gransee diagnosed Stewart with, among other things, cognitive disorder, adjustment disorder with depressed mood, and antisocial behavior. Dr. Gransee testified that Stewart is intelligent and articulate, that he is not on any medications, and that he has no history of psychological treatment. Dr. Gransee explained that the adjustment disorder diagnosis is based on Stewart's depression related to his incarceration, that the diminished cognitive functioning diagnosis is based on his memory problems, difficulty controlling his impulses, and short attention span, and that the antisocial behavior diagnosis reflects his criminal history. Dr. Gransee also testified that Stewart needs substance abuse treatment and therapy and that he might need testing for brain injury resulting from the train accident.

The IJ denied Stewart's application for CAT relief. The IJ found Stewart's testimony that he is bisexual not credible. The IJ noted that there was no corroborating evidence of his bisexuality, that Stewart's testimony and written application are

3

inconsistent as to when he had his first homosexual contact, and that, if Stewart prostituted himself to other men, it was to earn money. The IJ also found Stewart's testimony about his long-term relationships with men lacking in detail.[2]

The IJ also rejected Stewart's claim that he would be tortured in Jamaica on account of his mental health problems. The IJ noted that Stewart does not have an acute mental illness, agreed with Dr. Gransee that Stewart presents himself as intelligent and articulate, and stated that Stewart is taking no medications and had never sought counseling. The IJ stated that Stewart would not be viewed as mentally disabled based on his cognitive and adjustment disorders and that his antisocial behavior diagnosis is based on his criminal history. The IJ also noted that the background evidence Stewart submitted reflects that the mentally ill in Jamaica are stigmatized, not tortured.

The BIA dismissed Stewart's appeal. The BIA upheld the IJ's finding that Stewart had not credibly established his bisexuality. The BIA noted the inconsistency between his testimony and his written application as to whether he had any homosexual encounters before 2006. The BIA also found that, when asked about his long-term relationships with men, Stewart was non-responsive and he failed to provide any information about such relationships. The BIA noted that Stewart only testified about his relationship with his girlfriend, with whom he was living when he was arrested in 2010. The BIA found that these discrepancies adequately support the adverse credibility finding

---

[2]The IJ also noted an inconsistency between Stewart's testimony and application as to the violence he saw in Jamaica against homosexuals and questioned his testimony that he had told other Jamaican detainees that he is bisexual. As discussed below, the BIA did not consider these aspects of the IJ's decision.

4

and that it was unnecessary to consider the other aspects of the IJ's ruling in this regard.

The BIA also upheld the IJ's conclusion that Stewart had not established that he would be tortured in Jamaica on account of mental illness. The BIA noted that Stewart's adjustment-related depression appeared to be related to his incarceration, his antisocial behavior was based on his criminal activity, he had never sought psychological treatment, and he is not taking medication. The BIA agreed with Stewart's argument that he need not have a debilitating mental illness to be perceived as mentally ill, but upheld the IJ's finding that Stewart did not show symptoms that would cause him to be viewed as mentally ill. The BIA also upheld the IJ's finding that the evidence did not show that the government tortures, or acquiesces in the torture of, the mentally ill. This petition for review followed.

We have jurisdiction pursuant to 8 U.S.C. § 1252(a). Because the basis for Stewart's removal is a conviction for an aggravated felony, our jurisdiction is limited to constitutional claims or questions of law. Pierre v. Att'y Gen., 528 F.3d 180, 184 (3d Cir. 2008) (en banc) (citing 8 U.S.C. § 1252(a)(2)(C)-(D)). Our standard of review of legal determinations is de novo, subject to the principles of deference articulated in Chevron v. Natural Resources Defense Council, 467 U.S. 837 (1984). Id.

In his brief, Stewart challenges the various bases relied upon by the BIA and IJ for the adverse credibility determination as to his bisexuality, including the inconsistencies between his testimony and written application for relief and the lack of detail regarding his relationships with men. These arguments do not present a constitutional claim or question of law. We lack jurisdiction to review factual determinations, id., which include

5

adverse credibility findings. See Abdulrahman v. Ashcroft, 330 F.3d 587, 597 (3d Cir. 2003) (noting IJ's findings of fact include adverse credibility determinations). Thus, we will not consider these arguments.

Stewart also asserts that his due process rights were violated based on the BIA's failure to recognize the IJ's erroneous finding that his testimony and written application are inconsistent as to the violence he saw in Jamaica against homosexuals. See Pet'r's Br. at 16-18. The BIA did not rely on this finding in upholding the adverse credibility decision, but Stewart argues that the error required consideration because it was part of the IJ's rationale. Stewart also appears to contend that the BIA's decision to uphold the adverse credibility finding based on the other reasons stated by the IJ violated his due process rights. See Pet'r's Br. at 29.

Stewart has not raised a colorable due process claim. He "has simply taken his naked factual challenges and clothed them in the garb of due process." Jarbough v. Att'y Gen., 483 F.3d 184, 190 (3d Cir. 2007). He does not contend that he was denied notice, a reasonable opportunity to be heard, or an individualized determination on his claim. See id. As such, relief is not warranted.

Stewart also argues that the IJ failed to adjudicate his claim that he will be tortured in Jamaica on account of an imputed sexual identity. We agree with the Government that Stewart only claimed in the proceeding before the IJ that he would be harmed because he is bisexual. The Government also correctly notes that Stewart points to no evidence supporting a claim that he will be perceived as bisexual. Because Stewart did not raise a claim of imputed bisexuality, this argument lacks merit.

6

Stewart also challenges the denial of his claim that he will be tortured due to his his mental disabilities. He contends that Dr. Gransee's report and testimony reflect that he has mental health disorders, that the BIA and IJ did not acknowledge evidence showing discrimination against the mentally disabled in Jamaica, and that, in light of this evidence, the BIA and IJ erred to the extent they required him to show he suffered from a debilitating mental illness. We lack jurisdiction to consider these arguments, which challenge the agency's factual findings. We also note that the BIA agreed with Stewart that he need not show that he had a debilitating mental illness to be perceived as mentally ill.

Finally, Stewart argues that the IJ, and the BIA in affirming the IJ, improperly took judicial notice of the fact that his conduct and comments are inconsistent with bisexuality and the fact that he does not suffer from mental illness. Stewart did not raise this argument in his appeal to the BIA and it is not properly before us. Castro v. Att'y Gen., 671 F.3d 356, 365 (3d Cir. 2012). Moreover, Stewart appears to have asserted in his appeal below that the IJ did not take judicial notice of the meaning of bisexual or of facts related to mental disorders. A.R. at 15, 20.

Accordingly, we will deny the petition for review.

7